NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT,
*Plaintiff/Appellant*,

*v.*

MARICOPA COUNTY, et al., *Defendants/Appellees*.

No. 1 CA-TX 25-0002

FILED 07-29-2026

Appeal from the Arizona Tax Court
No. TX2025-000046

Maricopa County Superior Court
No. CV2025-001139
The Honorable Erik Thorson, Judge

**AFFIRMED**

COUNSEL

Ballard Spahr LLP, Phoenix
By John Kerkorian, Mitchell Turbenson, and Augustine Cinquino
*Counsel for Plaintiff/Appellant*

Fennemore Craig, PC, Phoenix
By Patrick Irvine, Spencer A. Shockness, and Claire A. MacCollum
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

---

Presiding Judge David B. Gass[1] delivered the decision of the court, in which Judge Anni Hill Foster and Judge D. Andrew Gaona joined.

---

**G A S S**, Judge:

¶1        Over several years, Maricopa County assessed excess property taxes, causing taxpayers to overpay their taxes. During that time, the County distributed a portion of those overpayments to the Maricopa County Community College District. In a separate action, taxpayers sued the County over the assessed taxes and eventually won, resulting in a judgment against the County. The County refunded the taxpayers for the overpayments plus interest under that judgment and then recouped a proportional amount of the overpayments from the District. The District filed a special action against the County and the County Treasurer to challenge the amount and timing of the recoupment. The superior court denied the County relief.

¶2        The District appeals that order, arguing the County could not recover interest in the 2024 judgment. The District also argues the County recouped the money too soon under A.R.S. § 42.16214.A. Because interest applies to the judgment under A.R.S. § 42-16214.C, and A.R.S. § 42-16214.A requires the County to subtract the amount of the judgment "from the amounts due to taxing jurisdictions in the next fiscal year," the court affirms.

## FACTUAL AND PROCEDURAL HISTORY

¶3        The District and Maricopa County are separate political subdivisions of the State of Arizona and constitute distinct taxing districts.

---

[1]        Judge David B. Gass was a sitting member of this court when the matter was assigned to this panel of the court. He retired effective June 30, 2026. In accordance with the authority granted by Article VI, Section 3, of the Arizona Constitution, and under A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge David B. Gass as a judge pro tempore in the Court of Appeals for the purpose of participating in the resolution of cases assigned to this panel during his term in office and for the duration of Administrative Order 2026-87.

*See* A.R.S. Const. Art. 9 § 19; A.R.S. § 35-511(2). The County Treasurer is a party in his official capacity.

¶4 After the District determines the budget for the current fiscal year, the County Assessor values properties based on their assessment valuations and then applies the applicable tax rate. *See* A.R.S. § 42-13051; A.R.S. §§ 42-15001 to -15010; *Machu Picchu Holdings, LLC v. Pinal Cnty.*, 255 Ariz. 73, 76 ¶ 3 (App. 2023). The Treasurer then pays the District its allocated share. A.R.S. § 42-6205.B.3.

**I.      This action arises from a stipulated judgment between the County and a class of the plaintiffs in *Qasimyar v. Maricopa County* (the *Qasimyar* action).**

¶5 Between 2016 and 2021, several groups of plaintiffs filed class action complaints against the County in which they challenged the County Assessor's classification for property tax purposes.

¶6 The plaintiffs first challenged the Assessor's classification decisions at the State Board of Equalization. Though the Board agreed the County Assessor improperly classified the properties, it did not find the County overcharged the taxpayers under A.R.S. § 42-13302. The plaintiffs appealed that decision to the superior court, which consolidated all the class action cases into the *Qasimyar* action.

¶7 A year and a half later (in June 2018), the superior court granted plaintiffs' motion for partial summary judgment. The County appealed, and the court affirmed. *See Qasimyar v. Maricopa Cnty.*, 250 Ariz. 580, 590 ¶ 34 (App. 2021).

¶8 Several years later (February 2024), the superior court eventually entered a stipulated judgment (the *Qasimyar* judgment). The reason for the multi-year delay is unclear. The judgment included damages in the amount the plaintiffs overpaid in property taxes from 2015 through 2021, depending on the year the plaintiffs filed their action, and accrued interest.

> [A]s a result of reductions of limited property values provided herein, Defendant Maricopa County shall calculate any excess property taxes levied, assessed, and timely paid and shall pay to the respective owner[s] of each parcel in the classes a property tax refund, less any applicable attorneys' fees awarded below, in an amount equal to the excess property taxes paid, plus interest at the legal rate payable

from the date of overpayment until the judgment is paid in
full as provided in A.R.S. §§ 42-16214 and 42-1123.

¶9         The judgment also addressed taxes paid in the years after the
plaintiffs filed their actions.

> [A]s it relates to plaintiffs' claims for refunds in subsequent
> years based on the changes for each parcel['s] initial year in
> litigation . . . those claims for additional years . . . are hereby
> dismissed, conditioned on the fact that, by operation of law,
> Defendant Maricopa County will correct its tax rolls as to all
> parcels included in the classes in all subsequent tax years and
> issue, where required by law, refunds with statutory interest.

¶10         The superior court signed the judgment on February 2, 2024,
during the fiscal year 2023-24. Fiscal year 2024-25 ran from July 1, 2024,
through June 30, 2025.

**II.     Several months later, the District learned about the County's plan
to recoup the judgment from the District and the other taxing
districts.**

¶11         The District learned about the recoupment in June 2024. For
the District, the recoupment request came as a surprise. The District was
neither involved in the *Qasimyar* action in any capacity nor consulted by the
County. The County admits it did not notify the District about the *Qasimyar*
action and did not explain its plan to withhold funds from the District to
fulfill the judgment. But the County claims it had no duty to communicate
with the District, and the District does not challenge that claim.

¶12         Whatever the County's notification obligations, the Treasurer
estimated the District owed the County $44,686,487. The District wrote to
the Treasurer, the Maricopa County Board of Supervisors, and the
Maricopa County Manager requesting a complete accounting of the
financial effect on the District. The District contends its governing board
already approved its budget for the 2024-25 fiscal year, which began on July
1, 2024, and thus had no ability to plan or budget for the unanticipated
expense.

¶13         Even so, the Treasurer began recouping the overpayments
and interest from monies the County held in an account for the District in
August 2024, ultimately taking $45,954,754.29, with $8,523,126 of accrued
interest.

¶14 The District filed a notice of claim with the County and the Treasurer. After more than 60 days passed, the District filed a special action against the County and the Treasurer.

### III. The District's complaint sought special action/mandamus relief, declaratory judgment, an accounting, and restitution.

¶15 The County answered and denied the District's right to relief. The County then asserted the complaint failed to state a claim upon which relief can be granted and that the District's proposed resolution would unjustly enrich the District.

¶16 The superior court resolved this dispute, ruling "the statutory language is clear and reads against [the District's] arguments." The superior court noted A.R.S. § 42-16214 "provides the process for 'refund or credit of excess payments' at the conclusion of property tax appeals generally." It then said section 42-18061 "sets forth a further process for refund of overpayments in the specific instance where, as here, there has been a 'change in tax roll.'" The superior court determined both statutes were "fully applicable" and "must be read as part of a cohesive property tax scheme" because "*Qasimyar* was a property tax appeal class action where there were changes made in the tax roll pursuant to law."

¶17 The court has jurisdiction over the District's timely appeal under Article VI, Section 9, of the Arizona Constitution, A.R.S. §§ 12-120.21.A.1 and -2101.A.1.

## DISCUSSION

¶18 Arizona has 2 tax recoupment statutes—A.R.S. § 42-16214 and A.R.S. § 42-18061. Section 42-16214 governs recoupment following a judgment. Section 42-18061 governs recoupment that follows from changes "made in the tax roll pursuant to law." The District argues the superior court misinterpreted those statutes because:

1. Later tax years were not part of the judgment, meaning section 42-16214's interest recoupment mechanism does not apply to later tax years; and

2. Section 42-18061 permits a credit only in the "next accounting after the repayment," which must be reconciled with section 42-16214's limit on recoupment to the next fiscal year's budgeting process.

**¶19** The court reviews issues of statutory interpretation *de novo*. *Advantage Pool & Spa Plumbing, Inc. v. Miles*, __ Ariz. __, __ ¶ 11 585 P.3d 827, 830 (App. 2026). A statute's plain language guides the court's interpretation. *See Ariz. Advoc. Network Found. v. State*, 250 Ariz. 109, 114 ¶ 19 (App. 2020). "Generally, if a statute is clear, we . . . assum[e] that the legislature has said what it means." *Hughes v. Jorgenson*, 203 Ariz. 71, 73 ¶ 11 (2002). The court determines "the plain meaning of the words the legislature chose" by viewing those words "in their broader statutory context." *In re Drummond*, 257 Ariz. 15, 18 ¶ 5 (2024) (citation omitted).

**¶20** The parties spend much of their briefing on the application of *in pari materia*. "[I]n pari materia is a primary tool of interpretation and ambiguity is not a prerequisite to applying it." *State Farm Auto. Ins. Co. v. Orlando*, 259 Ariz. 531, 536 ¶ 24 (2025). Statutes *in pari materia* should be construed together with related statutes. *Id*. ¶ 23. The court thus reads statutes on the same subject matter together to avoid rendering them unconstitutional. *Lagerman v. Ariz. State Ret. Sys.*, 258 Ariz. 504, 507 ¶ 13 (2020). The court "will read them in such a way as to harmonize and give effect to all of the provisions involved." *Marsh v. Atkins*, 256 Ariz. 233, 237 ¶ 14 (App. 2023). And "[w]hen a statutory scheme includes a general statute and a specific statute, the general statute remains applicable to all matters not dealt with in the specific statute" *See Reed v. Burke*, 219 Ariz. 447, 450 ¶ 12 (App. 2008).

**¶21** Here, the court is interpreting a narrower special statute (A.R.S. § 42-16214) and a more general comprehensive statute (A.R.S. § 42-18061). The court as such need not engage in *in pari materia* analysis because it can resolve the issue under the more specific statute (section 42-16214) governing overpayments and interest arising from the judgment. *See id.* The court thus leaves any interpretation of section 42-18061 and its reference to "next accounting" for another day in a matter which does not involve a judgment under section 42-16214.

**I.    The superior court did not err when it applied section 42-16214's judgment-based recoupment (including interest) to the claims for later years.**

**¶22** Subsection 42-16214.A applies when "judgment is awarded to a taxpayer." Under paragraph 42-16214.A.1, the County must pay the taxpayer the amount of the overpayment the next fiscal year "unless there are sufficient amounts available in funds budgeted for that purpose by the county to allow an immediate refund." Under paragraph 42-16214.A.3, the County also must pay "[i]nterest at the legal rate on the overpayment . . .

from the date of overpayment." And under paragraph 42-16214.A.2, the County also must subtract the amounts payable under the judgment "from the amounts due to taxing jurisdictions" in the next fiscal year.

¶23 The District relies on a strained reading of the *Qasimyar* judgment to argue the payments for "plaintiffs' claims for refunds in subsequent years based on changes for each parcel['s] initial year in litigation" are not subject to section 42-16214's interest provisions. The District argues section 42-18061 governs those payments because they resulted from a change in the tax roll, not the judgment. The County argues the judgment encompasses all amounts owed to the taxpayers. The County relies on the plain language of paragraph 42-16214.A.2, which allows the Treasurer to subtract the "amount of the judgment" from the District's funds "in proportion to the amount each received from the appellant's overpayment of taxes."

¶24 Because the judgment contradicts the District's argument, the County is correct. True, the judgment says, "the full cash values and classifications of each of the parcels shall not be changed by this judgment." But the judgment did address the changes in the tax classifications. For the year in which the taxpayers filed the lawsuit, it ordered the County to "correct its tax roll to reflect the corrected limited property values and reduced taxes for all parcels in the classes for the tax years" for which the taxpayers initiated their litigation. For "subsequent years based on the changes for each parcel['s] initial year in litigation," the judgment dismissed those claims. But the judgment conditioned the dismissal "on the fact that, by operation of law, Defendant Maricopa County will correct its tax rolls as to all parcels included in the classes in all subsequent tax years and issue, where required by law, refunds with statutory interest." Critically, when the superior court ordered the County to correct its tax roll for 1 year, that change stemmed from the judgment and carried it forward, meaning it would apply to all subsequent years. Because the judgment ordered the County to make the necessary corrections for all years and issue refunds with interest for all years, section 42-16214 applies to all overpayments and interest for all relevant tax years.

¶25 The superior court thus did not err when it concluded the County may collect interest from the District because, as the District concedes in its opening brief, "[w]hen interest is part of a judgment, Section 42-16214 affirmatively authorizes the County to recover that judgment amount, including interest, from taxing districts." Because the narrower statute applies and controls the outcome, nothing about this interpretation requires the court to consider how overpayments and interest under section

42-18061 (but not under 42-16214) might differ, if at all. *See Arden-Mayfair v. State*, 123 Ariz. 340, 342 (1979).

## II. The County did not recoup funds prematurely under A.R.S. § 42-16214.

**¶26** The District argues A.R.S. §§ 42-16214 and -18061 impose rigid sequencing rules for the County to follow when recouping overpayments and interest. The District contends section 42-18061 prevents the County from receiving a "credit for the refunds" until "the next accounting after the repayment." The County argues it complied with paragraph 42-16214.A.3 when it recouped the monies in the next fiscal year following the judgment. The County again is correct.

**¶27** The parties' briefing focuses on their interpretation of "next accounting." The District interprets "next accounting" as a restriction which requires the County repay taxpayers first and then seek a credit in the subsequent accounting period. The County interprets "next accounting" as an entitlement which should not restrict the County Treasurer from only applying a credit in a subsequent accounting period. Because the County processed all refund resolutions before the December 31, 2024 deadline as stipulated by the judgment, the court will not address section 42-18061's reference to the "next accounting." Instead, the court will focus on section 42-16214 because the overpayments and interest arise from the judgment, which occurred in fiscal year 204-2025. Paragraph 42-16214.A.2 says:

> The amount of the judgment shall be subtracted from the amounts due to taxing jurisdictions in the next fiscal year in proportion to the amount each received from the appellant's overpayment of taxes. The affected taxing jurisdictions shall include in their budgets for the next fiscal year the proportional amount of the judgment for which each is liable. Any increase in the budget because of the portion of the judgment being included is not subject to any budget limitation that may be prescribed by law.

**¶28** The District argues section A.R.S. § 42-18061 should lead the court to a different result. Paragraphs 42-18061.A.3 and -18061.A.4 address when the County may recoup payments when "a change is made in the tax roll pursuant to law." Paragraphs 42-18061.A.3 and 42-18061.A.4 collectively say:

3.    The county treasurer is entitled to credit for the refunds in the next accounting after the repayment with each of the political subdivisions and this state to which the overpayment of tax was distributed.

4.    The state and any affected political subdivision shall include in their budgets for the fiscal year the proportional amount of the refund for which each is liable.

But the change here flowed from the judgment, which section 42-16214 governs.

**¶29**    At bottom, consistent with section 42-16214, the superior court appropriately ruled the County acted timely in collecting the funds from the District in the next fiscal year. The judgment itself was issued on February 2, 2024. The County recouped the funds from the District before December 31, 2024, which is consistent with the stipulations to the judgment. The County could refund taxpayers with currently available monies, but section 42-16214 permitted the County to wait until the fiscal year after the judgment issued to do so. As the superior court found, the County timely recouped the funds because they "did wait until the fiscal year following the entry of judgment."

## CONCLUSION

**¶30**    The court affirms.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR